Filed 6/16/25  In re T.J. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re T.J., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> T.J., <br><br> Defendant and Appellant. | E084812 <br><br> (Super.Ct.No. J268952) <br><br> OPINION |

APPEAL from the Superior Court of San Bernardino County.  Charles J. Umeda, Judge.  Affirmed.

Susan S. Bauguess, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Maxine Hart, Deputy Attorneys General, for Plaintiff and Respondent.

1

In January 2017, the San Bernardino County District Attorney's Office alleged that T.J. (Minor) murdered Rocky Holmes in January 2016, committing the offense two months before Minor turned 17 years old. (Pen. Code, § 187, subd. (a).) The murder allegation was based on eyewitness accounts, including that after the victim survived an initial salvo of gunfire, Minor returned to the scene and shot him to death at close range. The prosecutor alleged Minor came within the jurisdiction of the juvenile court based on murder and other charges (Welf. & Inst. Code,[1] § 602, subd. (a)), but sought transfer of the case to adult criminal court under Welfare and Institutions Code section 707. In 2017, the juvenile court transferred the case to the criminal court. (Welf. & Inst. Code, § 707, subd. (a)(1).) In 2023, the criminal court transferred the case back to the juvenile court and, subsequently, the juvenile court again transferred it to the criminal court. (*Ibid.*) Minor appealed and this court reversed the transfer order on grounds that included requiring the juvenile court to consider a then-new 2024 amendment to the transfer rules. (*In re T.J.*, *supra*, E081349 [nonpub. opn.].) Upon doing so on remand, the juvenile court again transferred the case to criminal court, and Minor now appeals.

Minor contends we must reverse the juvenile court's latest transfer order because the court misapplied "the most recent amendments to the transfer laws" in 2023 and 2024. According to Minor, the amendments require consideration of a minor's amenability to rehabilitation as "a separate and determinative factor" in a transfer decision—*apart from* five enumerated statutory criteria. (See § 707, subd. (a)(3)(A)(i),

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

(B)(i), (C)(i), (D)(i), (E)(i).) As we explain more fully below, to the extent Minor is suggesting that amenability must be assessed in a manner that is, as the People critique the argument, "divorced" from the five criteria, we find no support in the law for Minor's contention. This court's recent opinion in *In re Miguel R.* (2024) 100 Cal.App.5th 152 (*Miguel R.*) makes clear that Minor's statutory analysis is incorrect. Moreover, Minor's argument falters as a practical matter because he fails to identify any specific additional relevant transfer criterion or factor absent from the five the Legislature enumerated, or that the juvenile court failed to consider. Minor's argument is therefore merely speculative or hypothetical. Because Minor fails to demonstrate any error or prejudice, his appellate challenge is without merit. We therefore affirm the transfer order.

## FACTUAL AND PROCEDURAL HISTORY

Given that the parties are well familiar with the procedural background and underlying facts alleged, we set them out as briefly as possible—with the case beginnings largely excerpted from our prior opinion, and brought current with the probation officer's new report on remand and the juvenile court's findings at the new transfer hearing.

### A.     MINOR'S PRIOR DELINQUENT ACTS

Minor was born in March 1999. Minor is a member of a criminal street gang. In 2011, when he was 12 years old, Minor admitted a misdemeanor battery allegation (Pen. Code, § 242), which we infer was resolved by diversion or otherwise by an unreported disposition such as youth court. (See Welf. & Inst. Code, §§ 601.5, 654.) At 14 years old, Minor admitted an allegation of fighting (Pen. Code, § 415, subd. (*l*)), which was again settled out of court. Approximately three months later, the juvenile court sustained

3

a first degree residential burglary (Pen. Code, § 459) allegation against Minor, declared him a ward of the court and granted him probation. Within three months, the juvenile court sustained an allegation that Minor acted as an accessory after the fact (Pen. Code, § 32) to a robbery. The court ordered Minor to serve 50 days in juvenile hall. In June 2014, when Minor was 15 years old, the juvenile court sustained an unlawful firearm possession allegation (Pen. Code, § 29610) and ordered him to serve 120 days in juvenile hall.

B.    MURDER ALLEGATION

The prosecutor alleged that in January 2016, under Minor's instigation and leadership, a cohort comprised of Minor, a person named Michion Darby, and possibly a third individual formed a plan to rob the victim, who sold marijuana. Minor or a coparticipant called the victim to schedule a meeting. When the victim arrived, Minor asked, " ' "where's the weed at?" The victim responded, "Where's the money at?" It was then [that Minor] shot him.' " In two separate shootings at the same location, Minor fired gunshots into the victim's abdomen, right hip, and right temple. The victim died at the hospital.

C.    2017 TRANSFER TO CRIMINAL COURT

In January 2017, the district attorney filed a petition in juvenile court, alleging Minor committed murder, robbery, and other offenses. In February 2017, the juvenile court ordered the case transferred to the criminal court. Applying the preponderance of the evidence standard, the juvenile court concluded, " 'The choices made by [Minor] have consistently reflected his commitment to pursuing a life of crime, such that he is not

4

amenable to the care, treatment and training programs of the juvenile system.' " The juvenile court dismissed the petition. Minor was transferred to the county jail.

D.    2023 TRANSFERS TO JUVENILE COURT AND BACK TO CRIMINAL COURT

Effective in 2023, the Legislature changed the law regarding transfer of juvenile cases to criminal court, including by increasing the prosecutor's burden of proof for transfer from a preponderance of the evidence to clear and convincing evidence. (Assem. Bill No. 2361 (2021-2022 Reg. Sess.), ch. 1012, § 1 (hereafter Assem. Bill No. 2361); see also § 707, subd. (a)(3).)

Under the new legislation, the criminal court in January 2023 transferred Minor's case back to the juvenile court, where the 2017 juvenile petition was reinstated. At that point, Minor was 23 years old and had been confined in the county jail for six years. The juvenile court ordered the probation department to investigate whether Minor was amenable to rehabilitation under juvenile court jurisdiction if the petition allegations were found to be true. The ensuing probation report indicated, incorrectly as it turned out, that Minor " 'would only be under the Juvenile Court's jurisdiction until the age of 25, which is a little more than one year from now, as [Minor] will turn 24 years old in six days.' "

The probation officer's report also recounted that Minor " 'has been terrorizing the county jail staff and inmates over the past six years. [Minor] is fully indoctrinated and engaged in the life and politics of the adult county jail. He has been exposed to various types of adult criminals, participated in assaults, and initiated a riot.' " The probation officer reiterated the department's 2017 criminal court transfer recommendation.

5

The juvenile court adopted the recommendation, in part based on the probation officer's estimate of the available rehabilitation period in juvenile facilities. The juvenile court's findings in its transfer order to criminal court included that a secure youth treatment facility, " 'Gateway to Arise[,] would be a possible option if [Minor's] case were to remain in the juvenile justice system.' " However, given Minor's age and that less than a year remained before the court believed it would lose jurisdiction over Minor at age 25, Minor would not serve his " 'youth baseline term [of] seven (7) years.' " The court concluded: " 'Because of [Minor's] current age, the court believes that [Minor's] potential to grow and mature is limited. Furthermore, [Minor]'s incarceration for approximately six years, acts of violence in county jail and lack of treatment while housed at county jail leads the court to conclude that he would require extensive rehabilitation over a long period of time for him to realistically be considered rehabilitated sufficiently for safe reentry into the community. At this time, if [Minor] remains within the jurisdiction of the juvenile court, he would be committed to a secured youth treatment facility (SYTF) for less than a year before reaching his [maximum] age of commitment. The court finds the evidence is clear and convincing that [Minor] cannot be rehabilitated prior to the expiration of the juvenile court's jurisdiction.' "

E.  MINOR GAINS REMAND AND A NEW TRANSFER HEARING

Minor appealed his re-transfer to criminal court. In *In re T.J.*, *supra*, E081349, this court reversed the second transfer order, holding that the juvenile court had incorrectly calculated the expiration of juvenile jurisdiction. The opinion also noted that newly enacted legislation made consideration of sexual abuse of the minor, if any,

mandatory. Effective January 1, 2024, Senate Bill No. 545 (2023-2024 Reg. Sess.) (hereafter Sen. No. 545) mandated that juvenile courts consider certain factors, including a minor's childhood trauma and status as a victim of sexual abuse when assessing amenability to rehabilitation.

On appeal in *In re T.J.*, the parties recognized there was some evidence in the record that an adult woman engaged in a sexual relationship with Minor, which the juvenile court had not considered in making its transfer order. Consequently, we reversed the second transfer order so that the juvenile court could reconsider Minor's amenability to rehabilitation, both under the amended law and with a correct understanding of the remaining time under juvenile jurisdiction. As we explained, "A juvenile court retains jurisdiction over a murderer until the murderer 'attains 25 years of age, *or two years from the date of commitment to a secure youth treatment facility . . . whichever occurs later*." (§ 607, subd. (c) [eff. through Sept. 12, 2023]; see also § 1769, subds. (b) & (d)(2).) Thus, the juvenile court would have had jurisdiction over T.J. until two years after committing him to a juvenile facility, if the allegations were found true." (*In re T.J.*, *supra*, E081349, p. 6, italics added, fns. omitted.)

F.      <u>PROBATION REPORT FOLLOWING REMAND</u>

On remand, the juvenile court directed the probation department to prepare a new transfer hearing report. The department's report classified Minor as "legally eligible, but unsuitable for the SYTF-ARISE program based upon the criteria described in section 875 of the Welfare and Institutions Code."

The report acknowledged Minor had been jailed since March 3, 2017, "but prior to his original transfer from Juvenile Hall to San Bernardino County Jail, he consistently attended school, was close to graduating, and usually earned high behavior dollars each week. He was involved in one code red on October 20, 2016, and had some negative behavior write ups." (CT 33.)

The report reflected that since his transfer to county jail, Minor engaged in "numerous" behavioral incidents requiring discipline. Further, he committed multiple new offenses for which he was being prosecuted in criminal court, including two pending cases for battery on fellow inmates (case Nos. FWV18000882 & FSB19001186) and one for robbery (case No. FWV20001539). He was also reportedly active in smuggling drugs into three San Bernardino County jails.

According to the department's report, Minor enrolled in some jail programming starting in May 2023, completing a substance abuse program that month, a living skills class in August 2023, and a program called "FAITHS Throughcare Program" in December 2023. Minor attended weekly counseling through the FAITHS program and was waitlisted for an employment readiness and journaling class.

The probation department concluded Minor was "not considered to be a suitable subject to be dealt with under juvenile court law." The probation officer who prepared the report testified at the transfer hearing. She noted Minor completed his high school graduation requirements in jail. His discipline record in jail included assaults, failure to obey direct orders, and destroying bedding and clothing. Minor began attending substance abuse classes but still engaged in drug sales.

8

G.      <u>JUVENILE COURT'S NEW TRANSFER ORDER AND FINDINGS</u>

Following a hearing, the juvenile court issued a detailed written order in which the court concluded Minor was not amenable to rehabilitation under the court's supervision, and transfer to criminal court was therefore appropriate.

The court's findings included details concerning Minor's alleged criminal offenses committed in jail. The offenses included battery on a fellow inmate soon after Minor's transfer from juvenile hall, multiple batteries and assaults over the next several years in which the respective victims were hospitalized or lost consciousness, and a mutual combat incident in which Minor's face was cut. The court also noted that Minor was being prosecuted for his significant role in the drug smuggling operation. The court found that Minor used his jail phone calls to arrange to import the drugs through priority mail in which paperwork was sprayed or infused with illegal drugs, cut into pieces, and sold to other inmates to be ingested orally. The court also observed that Minor did not enroll in any rehabilitative programming in jail for more than six years, between 2017 and May 2023.

The court made detailed findings regarding each of the transfer criteria set forth in section 707, subdivision (a)(3)(A)-(E), as follows:

1.      *DEGREE OF CRIMINAL SOPHISTICATION EXHIBITED BY THE MINOR*

On the first criterion, the court found Minor's high level of criminal sophistication weighed against his amenability to rehabilitation. The court's findings included that Minor prepared for the robbery in which the victim was killed by procuring firearms, and

he did not panic or flee the scene after shooting the victim but returned to ensure the victim's death by shooting him again. Further, Minor took "a lead role in planning and facilitating the robbery" and "acted on his own accord in shooting and killing the victim," "not as the result of peer or adult pressure." Minor also admitted participating in a previous robbery-shooting and, having done so, knew to take steps to "avoid[] capture and being connected to the murder weapon." The court found that "evidence that [Minor] was the victim of sexual abuse is inconclusive," but, even assuming it occurred, nothing suggested it "contributed to his criminal sophistication."

The court expressly found: "As to this criterion, the high level of the youth's criminal sophistication weighs against [his] amenability to rehabilitation in the juvenile justice system."

### 2. REHABILITATION BEFORE EXPIRATION OF THE JUVENILE COURT'S JURISDICTION

The juvenile court determined that now 25 years old, Minor would remain subject to the court's jurisdiction for two years if he were committed to a juvenile facility, such as the secure youth treatment facility known as ARISE. (§ 607, subd. (c).) The court noted, "the ARISE program offers a wide range of courses including counseling and therapy opportunities, educational and job training classes, gang prevention and anger replacement therapy (ART)." Minor had participated in life skills classes, anger management, community service, and ART while at juvenile hall before his transfer to county jail, to no effect.

10

The court observed that after the transfer, Minor "engaged in numerous acts of violence against other inmates" and "failed to make any attempt[] at rehabilitation [despite] more than 20 programs available to all inmates." Even once he enrolled, "he participated in a sophisticated conspiracy to import . . . and distribute illegal drugs." Given this history and based on Minor's age, the court concluded his "potential to grow and mature is limited." The court found Minor's "numerous acts of violence in county jail, participation in the importation and distribution of illegal drugs [scheme] and apparent lack of demonstrated reduction in criminal behavior while participating in programming, lead the court to conclude that he cannot be rehabilitated prior to the expiration of the court's juvenile jurisdiction."

The court found more generally: "As to this criterion, the unlikelihood of [Minor] being rehabilitated prior to expiration of the court's jurisdiction weighs against his amenability to rehabilitation in the juvenile justice system."

### 3. *PREVIOUS DELINQUENT HISTORY*

The court found Minor's previous delinquent history, while serious, "weighs in favor of his amenability to rehabilitation." That history included residential burglary (Pen. Code, § 459), purse snatching in a supermarket parking lot (Pen. Code, § 211), resisting or obstructing a peace officer (Pen. Code, § 148, subd. (a)(1)) and possession of a firearm (Pen. Code, § 29610). The court concluded that though these offenses were serious, they were "similar to, if not less serious than, the delinquency of other youth who have been dealt with under juvenile law."

11

### 4. *PREVIOUS ATTEMPTS AT REHABILITATION*

The juvenile court found that previous attempts at rehabilitating Minor had been unsuccessful. This included settling some misdemeanor matters out of court that Minor admitted to, yet within a year he committed the felony burglary. Within two months of receiving formal probation for that offense, he was charged with second degree robbery for the purse snatching and then was continued on probation after admitting to being an accessory after the fact to yet another offense. While he did complete probation in March 2015 for his firearm possession offense, less than a year later he committed murder. The court found: "As for this criterion, the juvenile court's lack of success in previous attempts to rehabilitate [Minor] weighs against his amenability to rehabilitation."

### 5. *CIRCUMSTANCES AND GRAVITY OF OFFENSE*

As the juvenile court had done for each of the previous criteria regarding its transfer decision, the court's findings on this criterion tracked statutory factors noted for the court's consideration, where relevant. (See § 707, subd. (a)(3)(A)(ii), (B)(ii), (C)(ii), (D)(ii), (E)(ii).)

The court noted the allegations against Minor consisted of "the most serious criminal offense; the killing of another human being." The court found: "The evidence showed the cold-blooded nature of the youth when he returned to the scene after wounding the victim and proceed[ed] to shoot and kill the victim, then search[ed] the victim's car for valuables and marijuana." Minor was directly involved in the planning and execution of the robbery and shooting. Minor's actions showed "a high level of

12

callousness and total lack of regard for human life in his behavior during and after committing the robbery and murder. There was very little, if any evidence, regarding the mental and emotional development of the youth at the time of the incident." The court found no mitigation of the gravity of the offense. No evidence suggested the victim trafficked, sexually abused, or sexually battered Minor.

The court determined, "As to this criterion, the court finds that the circumstances and seriousness of the offense weighs against [Minor's] amenability to rehabilitation."

At the close of its transfer order, the juvenile court found, "[b]ased upon all the foregoing reasons [and] after considering the [section] 707(a) transfer criteria, . . . the People have met their burden to prove by clear and convincing evidence that [Minor] is not amenable to rehabilitation while under the jurisdiction of the juvenile court." The court ordered transfer of Minor's case to criminal court, to be set for an initial hearing regarding bail.

## DISCUSSION

Minor does not challenge the sufficiency of the evidence to support the juvenile court's transfer decision. Instead, Minor asserts that the court applied the wrong legal standard in making its decision. We disagree with Minor; the court did not err.

A.  LEGAL FRAMEWORK

Section 707 sets forth the procedures for transferring a minor from juvenile court to criminal court. It provides that whenever a minor aged 16 years or older is alleged to have committed a felony, the prosecutor may move "to transfer the minor from juvenile court to a court of criminal jurisdiction." (§ 707, subd. (a)(1); see *Miguel R.*, *supra*,

13

100 Cal.App.5th at p. 164.)  The prosecution bears the burden of proving that the minor should be transferred. (Cal. Rules of Court, rule 5.770(a).)

The Legislature amended section 707 in 2023 and 2024.  Effective January 1, 2023, Assem. Bill No. 2361 amended section 707, subdivision (a)(3), by adding a new sentence and clause, shown in italics here:  "Following submission and consideration of the [probation officer's] report [ordered by the juvenile court upon a prosecutor's transfer motion], and of any other relevant evidence that the petitioner or the minor may wish to submit, the juvenile court shall decide whether the minor should be transferred to a court of criminal jurisdiction.  *In order to find that the minor should be transferred to a court of criminal jurisdiction, the court shall find by clear and convincing evidence that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court*.  In making its decision, the court shall consider the criteria specified in subparagraphs (A) to (E), inclusive.  If the court orders a transfer of jurisdiction, the court shall recite the basis for its decision in an order entered upon the minutes, *which shall include the reasons supporting the court's finding that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court*."  (§ 707, subd. (a)(3), italics added.)

The five statutory criteria listed in subparagraphs (A) through (E) of section 707, subdivision (a)(3), were not amended by Assem. Bill No. 2361.  Those criteria are: (1) "the degree of criminal sophistication exhibited by the minor" (§ 707, subd. (a)(3)(A)(i)); (2) "[w]hether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction" (§ 707, subd. (a)(3)(B)(i)); (3) "[t]he minor's previous delinquent history" (§ 707, subd. (a)(3)(C)(i)); (4) "[s]uccess of previous attempts by the

juvenile court to rehabilitate the minor" (§ 707, subd. (a)(3)(D)(i)); and (5) "[t]he circumstances and gravity of the offense alleged in the petition to have been committed by the minor" (§ 707, subd. (a)(3)(E)(i)).  The statute sets forth a nonexhaustive list of relevant factors for the court to consider with respect to each of the five criteria.  (§ 707, subd. (a)(3)(A)(ii), (B)(ii), (C)(ii), (D)(ii), (E)(ii).)  For example, in evaluating the second criterion regarding a minor's prospects for rehabilitation within jurisdictional time limits, the juvenile court must consider "the minor's potential to grow and mature."  (§ 707, subd. (a)(3)(B)(ii).)

Effective January 1, 2024, Sen. No. 545 amended section 707 to require that in considering the five criteria identified in subparagraphs (A) to (E), the juvenile court "shall give weight to any relevant factor," including the specific factors listed as relevant to each criterion.  (§ 707, subd. (a)(3)(A)(ii), (B)(ii), (C)(ii), (D)(ii), (E)(ii).)  The previous version of the statute made consideration of those factors discretionary, not mandatory.  (Former § 707, subd. (a)(3)(A)(ii), (B)(ii), (C)(ii), (D)(ii), (E)(ii).)  With respect to the degree of criminal sophistication, Sen. No. 545 also added new mandatory factors for the court to consider:  whether the minor has had any involvement in the child welfare or foster care system and whether the minor has been "a victim of human trafficking, sexual abuse, or sexual battery."  (§ 707, subd. (a)(3)(A)(ii).)

B.     STANDARD OF REVIEW

We review the juvenile court's ruling on a transfer motion for abuse of discretion. (*Miguel R.*, *supra*, 100 Cal.App.5th at p. 165.)  "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's

ruling under review." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712.) As pertinent here, a lower court's "conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Ibid*, fns. omitted.) We interpret the governing law de novo. "In interpreting a statute, our primary goal ' "is to determine the Legislature's intent so as to effectuate the law's purpose." ' [Citation.] ' "Because the statutory language is generally the most reliable indicator of that intent, we look first at the words themselves, giving them their usual and ordinary meaning." ' " (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 294.) " ' "If the statutory language is unambiguous, then its plain meaning controls." ' " (*Ibid*.)

C.     <u>MINOR'S CONTENTIONS AND OUR ANALYSIS</u>

Minor argues that under Assem. Bill No. 2361 and Sen. No. 545 " 'amenability to rehabilitation' is a separate and determinative factor" in the juvenile court's transfer decision. (Underscore omitted.) Minor's briefing repeatedly emphasizes amenability to rehabilitation as "a *separate* factor," "in addition to the other considerations set forth in section 707, subdivision (a)(3)," i.e., the five enumerated criteria the juvenile court must also consider. Minor acknowledges the juvenile court "is still required to consider those five factors," but insists that "a separate determination the minor is not amenable to rehabilitation" is also necessary. Minor asserts the juvenile court "fail[ed] to make a separate finding [that he] was not amenable to rehabilitation," which "requires . . . reversal of the transfer order."

We first address Minor's contention the juvenile court failed to make a separate finding regarding his amenability to rehabilitation. Minor is factually incorrect. As set

16

out in the juvenile court's transfer order, the record reflects that after discussing its findings regarding each of the five enumerated criteria in subparagraphs (A) to (E) of subdivision (a) of section 707, and identifying how each criterion and relevant subfactors weighed in the court's transfer decision—whether for or against—the court in a separate paragraph made a separate finding regarding Minor's ultimate amenability to rehabilitation.  Namely, the court found:  "Based upon all the foregoing reasons, after considering the 707a transfer criteria, the Court finds that the People have met their burden to prove by clear and convincing evidence that the Youth is not amenable to rehabilitation while under the jurisdiction of the juvenile court."  At bottom, therefore, Minor's bid for reversal on grounds that the juvenile court did not make a separate finding that he was not amenable to rehabilitation is unsupported by the record.  That distinct finding is embodied in the quoted paragraph.

Regarding Minor's more general contention concerning the governing law for the juvenile court's decision, Minor's argument can be interpreted as noncontroversial and correct, in a certain sense.  That is, a minor's amenability to rehabilitation *is* a separate factor or component in the trial court's calculus of its transfer decision.  It is distinct from any single enumerated criterion.  As this court has recently explained, the juvenile court's "ultimate" amenability determination is "not the same as" any single criterion or factor, but rather "concerns a *global assessment* of the minor's suitability to rehabilitation within the juvenile court system."  (*Miguel R.*, *supra*, 100 Cal.App.5th at pp. 166-167, italics added.)  We have no quarrel with Minor's contention when read in that sense.

17

But we think Minor meant something else. By a repeated, italicized emphasis on amenability to rehabilitation as a *separate* factor in the trial court's transfer decision—essentially a sixth factor "in addition to" and thus suggested to be unmoored from the five statutory criteria enumerated by the Legislature—Minor seems to argue that the juvenile court's amenability determination must be made apart from or divorced from those five criteria. To the extent that is what Minor argues, he is wrong. As *Miguel R.* explained regarding the juvenile court's "global" assessment of amenability: "Section 707(a)(3) (as amended by Assembly Bill 2361) mandates that the juvenile court '*shall* consider the criteria specified in subparagraphs (A) to (E), inclusive' in determining whether 'the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court.' Thus, according to the statute's plain language, the court is required to consider each of the five listed criteria *in determining whether* the prosecution has carried its burden of proof to transfer a juvenile to criminal court." (*Miguel R.*, *supra*, 100 Cal.App.5th at p. 166, italics added.)

Minor disagrees, but simply points to the existence of the language in section 707, subdivision (a)(3), prohibiting transfer unless the juvenile court "find[s] by clear and convincing evidence that a minor was not amenable to rehabilitation while under the jurisdiction of the juvenile court." Minor invokes legislative history restating this statutory language in the following manner: "the court [must] find that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court in order to transfer the minor to a court of criminal jurisdiction." (Assem. Com. On Pub. Saf. Com. on Assem. Bill No. 2361 (2022 Reg. Sess.), p. 7.) Minor views the addition of this

18

statutory language in Assem. Bill No. 2361 as a "further requirement" in addition to the five statutory factors, "result[ing] in a separate and distinct factor to be considered by the juvenile court."

In essence, Minor's position is that because the amenability to rehabilitation language was added to section 707, subdivision (a)(3), in a different grammatical sentence than the Legislature's reference to the five criteria for making that determination, the amenability determination is an additional criterion that is separate from the other five. This manner of statutory construction is wholly incorrect. Statutory language must be "read as a whole, not as individual words in isolation." (*People v. Ledesma* (1997) 16 Cal.4th 90, 97.) We avoid interpretations that render other, accompanying statutory language surplusage. (*Miguel R.*, *supra*, 100 Cal.App.5th at p. 166.) The statute plainly specifies, as noted in *Miguel R.*, that "*[i]n making its [amenability] decision*, the court shall consider the criteria specified in subparagraphs (A) to (E)." (§ 707, subd. (a)(3), italics added.) Thus, "the express terms of section 707(a)(3) require the court to evaluate [the] five criteria in determining whether 'the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court.' " (*Miguel R.*, at p. 167.) Minor's suggestion that amenability is a separate, sixth criterion to be made without reference to the five enumerated criteria is without merit.

Minor makes the same interpretative error in relying on California Rules of Court (CRC), rule 5.770(b). Minor observes that in restating "Criteria to consider (§ 707)" for a

juvenile court's transfer decision, the rule lists amenability to rehabilitation in a different paragraph than the criteria specified in section 707, subdivision (a)(3)(A)-(E).[2]

Minor argues that this grammatical division of amenability and the five statutory criteria into different paragraphs "makes it clear unamenability to rehabilitation is a *separate* factor the prosecution is required to prove by clear and convincing evidence, in addition to the other considerations set forth in section 707, subdivision (a)(3)."  Not so. We agree with respondent that "just because the Judicial Council added amenability to rehabilitation as a third finding in the wake of AB 2361, rather than incorporating it into the second finding, does not mean it is divorced from the five criteria."  Rather, we regard the Judicial Council's decision to use multiple paragraphs instead of a single, longer one to be a drafting choice for brevity and convenience.  In other words:  a choice similar to the Legislature's use of more than one sentence in articulating transfer considerations in section 707, subdivision (a)(3).  In any event, the rule of court furnishes no support for Minor's construction of the statute, given the statute's "express terms" tying amenability to consideration of the five criteria.  (*Miguel R.*, *supra*, 100 Cal.App.5th at p. 167; see *In*

---

[2]  CRC rule 5.770, regarding "Conduct of transfer of jurisdiction hearing under section 707," provides in pertinent part under "Criteria to consider (§ 707)":  "Following receipt of the probation officer's report and any other relevant evidence, the court may order that the youth be transferred to the jurisdiction of the criminal court if the court finds by clear and convincing evidence each of the following:  [¶]  (1) The youth was 16 years or older at the time of any alleged felony offense . . . ; [¶]  (2) The youth should be transferred to the jurisdiction of the criminal court based on an evaluation of all the criteria in section 707(a)(3)(A)-(E) as provided in that section; and [¶]  (3) The youth is not amenable to rehabilitation while under the jurisdiction of the juvenile court."

*re Richard S.* (1991) 54 Cal.3d 857, 863 [court rules may have "force of [a] statute," but only "to the extent that they are not inconsistent with legislative enactments"].)

Minor's citation to legislative history mentioning *Kevin P. v. Superior Court of Contra Costa County* (2020) 57 Cal.App.5th 173 (*Kevin P.*) is also unconvincing. Minor cites *Kevin P.* as "illustrative of the Legislature's concerns" in stating expressly in section 707, subdivision (a)(3), the centrality of a minor's amenability to rehabilitation in a juvenile court's transfer decision. Minor then quotes the reviewing court's decision in *Kevin P.*, which predated the enactment of Assem. Bill No. 2361. The *Kevin P.* court stated: "Although the trend in the law is clearly toward retaining more minors in juvenile court, nothing in section 707 supports the notion that the rehabilitation criterion is now determinative regardless of the other criteria that must be considered. Thus, even though the evidence of Kevin's amenability to rehabilitation in juvenile court is compelling, we are unable to say as a matter of law that '[n]o juvenile court could reasonably conclude, based on all of the evidence presented,' that he should be transferred to criminal court." (*Kevin P.*, at p. 201.) Next, Minor also excerpts legislative history critical of *Kevin P.*, as follows: "Absent statutory guidance, the appellate courts have been unwilling to find that youth amenable to rehabilitation must be retained in juvenile court. (See *Kevin P. v. Superior Court* (2020) 57 Cal.App.5th 173, 201.)" (Assem. Com. on Pub. Saf. com. on Assem. Bill No. 2361, *supra*, p. 6.)

Minor then reaches the conclusion from these respective case and legislative history excerpts: "The amended language of section 707 is clear. The juvenile court still should consider the five statutory factors, *but* the court must also make a *separate*

21

determination that the minor is not amenable to rehabilitation prior to ordering transfer to adult court." Minor's conclusion that the amenability determination is entirely separate from the five statutory criteria is a bare assertion; it does not follow from the excerpts. Again, moreover, Minor does not address the statutory language as a whole, including the Legislature's plain directive that "[i]n making its [amenability] decision, the court shall consider the criteria specified in subparagraphs (A) to (E)." (§ 707, subd. (a)(3); *Miguel R.*, *supra*, 100 Cal.App.5th at pp. 166-167.) The statutory language is thus clear in a manner exactly contrary to Minor's construction. Hence, Minor's bare gloss on the statute is not only unsupported by his excerpted language, there is no need to resort to legislative history given the statute's clear terms. (*People v. Mendoza*, *supra*, 88 Cal.App.5th at p. 294.)

Finally and independently, Minor's appellate challenge fails for lack of prejudice. (See Cal. Const., art. VI, § 13 ["No judgment shall be set aside . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice"].) Minor fails to identify any specific evidence or consideration the juvenile court should have weighed regarding amenability as a hypothetically separate, sixth criterion that the court did not otherwise consider in weighing the Legislature's five enumerated criteria. Under a heading asserting that reversal is required because the juvenile court "fail[ed] to make a separate [amenability] finding," Minor complains only that "[i]t was not until he was transferred to county jail that his behavior changed," and he similarly highlights that "he was doing well in juvenile hall before the original transfer hearing." But the juvenile

22

court expressly considered this and similar evidence under criterion (B) of section 707, regarding Minor's prospects for rehabilitation under juvenile court jurisdiction.  (§ 707, subd. (a)(3)(B)(i).)  The court concluded that criterion as a whole "weigh[s] against his amenability" and Minor does not challenge the sufficiency of the evidence to support the court's conclusion—which we may not reweigh.  (*Miguel R.*, *supra*, 100 Cal.App.5th at p. 165 ["we draw all reasonable inferences in support of the court's findings"].)

For all of the foregoing reasons, Minor's challenge to the juvenile court's transfer order is without merit.

## DISPOSITION

The juvenile court's transfer order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
Acting P. J.

We concur:

CODRINGTON
J.

MENETREZ
J.